## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPETITIVE ENTERPRISE INSTITUTE )
1899 L Street, N.W., 12th Floor )
Washington, D.C. 20036 )
  )
      Plaintiff, )
  )
    v. )      Civil Action No. 14-765
  )
OFFICE OF SCIENCE AND )
 TECHNOLOGY POLICY )
Eisenhower Executive Office Building )
1650 Pennsylvania Avenue, N.W. )
Washington, DC 20504 )
  )
     Defendant. )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND RELIEF IN THE FORM OF MANDAMUS

Plaintiff COMPETITIVE ENTERPRISE INSTITUTE for its complaint against Defendant the

OFFICE OF SCIENCE AND TECHNOLOGY POLICY ("OSTP"), alleges as follows:

1) This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel

   production under a request for certain records reflecting the conduct of, or otherwise relating

   to, agency business.

2) The request at issue in this complaint sought a senior federal official's OSTP-related emails,

   while he served as OSTP Director, sent to or from a certain non-official email account

   maintained by his previous employer.  Plaintiff learned that Director Holdren maintained this

   non-official email address and continued to use it to correspond with certain colleagues on

   work-related issues despite leaving the environmental group's employment to work with the

   White House.  Plaintiff learned of this by way of a *Vaughn* Index it received under another

FOIA request, which listed some correspondence from this account as work-related by another senior executive branch official.

3) In a FOIA request sent in October 2013, CEI sought OSTP-related email sent to or from this specified non-official email account while Holdren was employed at the White House.

4) The requested emails and other records are of significant public interest due to the ongoing controversy surrounding widespread use by senior government officials of non-official email accounts for select work-related correspondence. The non-official accounts then are generally not searched in response to FOIA or congressional oversight requests seeking work-related "records" or "electronic records."[1]

5) Defendant claimed plaintiff's request was not in fact a FOIA request because it described records "beyond the reach of FOIA", ignoring federal law, rules, judicial precedent, and even defendant's own "Holdren memo" making clear that federal recordkeeping laws reach "work-related emails" in "any personal email account."[2]

6) By unjustly refusing to acknowledge plaintiff's request was a FOIA request, for agency records covered under FOIA, defendant failed to provide a substantive response.

7) Plaintiff appealed that decision, which appeal defendant inaccurately characterized instead as plaintiff "clarifying" its request so as to only seek emails on the OSTP computers, contrary to

---

[1] *See, e.g., Landmark Legal Foundation v. EPA*, 959 F.Supp.2d 175, 181 (D.D.C. 2013) ("EPA did not search the personal email accounts of the Administrator, the Deputy Administrator, or the Chief of Staff" despite "evidence that upper-level EPA officials conducted official business from their personal email accounts").

[2] May 10, 2010 Memo from OSTP Director John Holdren to all OSTP staff, *Subject: Reminder: Compliance with the Federal Records Act and the President's Ethics Pledge*, at 1, available as Exhibit B to the letter found at http://www.citizensforethics.org/page/-/PDFs/Legal/Investigation/Request_for_Investigation_into_White_House_20100628.pdf?nocdn=1. Holdren's memo, which is found on the 10th and 11th sheets of that letter, is referred to in this Complaint as the "Holdren memo."

the plain language of plaintiff's request. It did not otherwise address plaintiff's appeal seeking

emails from Holdren's personal account, even though FOIA prescribes a 20-working-day

deadline for ruling on the merits of an appeal. 5 U.S.C. § 552(a)(6)(A)(ii); 32 CFR 2402.7(c).

8)  As such, defendant failed to provide the required ruling on the appeal within the statutory

deadline, and accordingly plaintiff has exhausted its administrative remedies.

8) Alternately, if this did constitute a ruling on plaintiff's administrative appeal, then plaintiff

has exhausted its administrative remedies.

10)  After defendant either denied or mischaracterized (and thus failed to adjudicate) plaintiff's

administrative appeal, plaintiff sent another letter informing defendant there is no support for

that rewriting of its request, that it sought the described work-related records sent to or from

Dr. Holdren's unofficial account still hosted by his former employer.  It further noted that

defendant had failed to substantively respond to its appeal in the statutorily-mandated period

of time. It also explained that plaintiff would exercise its right to judicial review if defendant

did not cure its failure by providing a substantive response to the appeal by the beginning of

the current month.

11) Defendant has continued to fail to respond.

12) Defendant's efforts, if successful, would bar future requesters from obtaining records this

Court has recently made plain must be produced when they are requested after the email

accounts' use is discovered (in *Competitive Enterprise Institute v. EPA,* No. 12-1617, ---

F.Supp.2d ---, 2014 WL 308093, at *14 (D.D.C. Jan. 29, 2014)), thereby rewarding actions

that frustrate the Freedom of Information Act, Federal Records Act, and other federal laws

and regulations.

13) After six months of delay, defendant is now legally obligated to produce records responsive to plaintiff's request, as written.

## PARTIES

14) Plaintiff CEI is a public policy research and educational institute in Washington, D.C., dedicated to advancing responsible regulation and in particular economically sustainable environmental policy.  CEI's programs include research, investigative journalism and publication, as well as a transparency initiative seeking public records relating to environmental policy and how policymakers use public resources.

15) Defendant is a FOIA-covered, congressionally established office within the executive branch that "advise[s] the President and others within the Executive Office of the President on the effects of science and technology on domestic and international affairs," located in Washington, D.C. next to the White House.

## JURISDICTION AND VENUE

16) This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

17) Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiffs reside in the District of Columbia, and defendant is federal agency.

## FACTUAL BACKGROUND

18) Transparency in government is the subject of high-profile promises from the president and attorney general of the United States arguing forcefully against agencies failing to live up to their legal recordkeeping and disclosure obligations. Attorney General Holder states, *inter alia*, "On his first full day in office, January 21, 2009, President Obama issued a

memorandum to the heads of all departments and agencies on the Freedom of Information Act

(FOIA). The President directed that FOIA 'should be administered with a clear presumption:

In the face of doubt, openness prevails.'" OIP Guidance, *President Obama's FOIA*

*Memorandum and Attorney General Holder's FOIA Guidelines, Creating a "New Era of*

*Open Government,"* http://www.justice.gov/oip/foiapost/2009foiapost8.htm. This and a

related guidance elaborate on President Obama's memorandum.

19)  Plaintiff and others have exposed the practice by many executive branch employees of using

non-official email accounts to conduct official or work-related correspondence, often with

their network of contacts of former colleagues who still share an interest in what is now the

employee's official business, without creating the official record required by federal statute

and regulation (*e.g*., Federal Records Act of 1950 44 U.S.C. 3101 *et seq*., and the E-

Government Act of 2002; 36 C.F.R. Subchapter B, Records Management, and all applicable

National Archives and Records Administration (NARA) mandated guidance).[3] Regardless of

---

[3] For example plaintiff has learned of 18 senior EPA officials engaging in this practice, as well as
former or current officials in the Departments of Energy and Treasury, and OSTP. *See, e.g.,*
Judson Berger, "EPA official scrutinized over emails to resign", FoxNews.com, February 19,
2013, http://www.foxnews.com/politics/2013/02/19/epa-official-scrutinized-over-emails-to-
resign/; Jim Snyder, *Brightsource Warned Of Embarrassment To Obama In Loan Delay*,
Bloomberg, June 6, 2012, www.bloomberg.com/news/2012-06-06/brightsource-warned-of-
embarrassment-to-obama-from-loan-delays.html; Eric Lichtblau, *Across From White House,
Coffee With Lobbyists*, New York Times, June 24, 2010, at A18,
www.nytimes.com/2010/06/25/us/politics/25caribou.html (lobbyists "routinely get e-mail
messages from White House staff members' personal accounts rather than from their official
White House accounts, which can become subject to public review"). *See* Senate EPW
Committee, Minority Report, *A Call for Sunshine: EPA's FOIA and Federal Records Failures
Uncovered* (Sept. 9, 2013) at 8,
http://www.epw.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=513a8b4f-
abd7-40ef-a43b-dec0081b5a62; *see also* August 14, 2012 *Letter* from U.S. House Committee on
Oversight and Government Reform Chairman Darrell Issa and subcommittee Chairmen Jim
Jordan and Trey Gowdy to Energy Secretary Steven Chu, http://oversight.house.gov/wp-
content/uploads/2012/08/2012-08-14-DEI-Gowdy-Jordan-to-Chu-re-loan-program-emails.pdf

intent, this practice violates also results in the frustration of federal record-keeping and

disclosure laws. *See Landmark Legal Foundation v. E.P.A.*, 2013 WL 4083285, *6 (D.D.C.

Aug. 14, 2013).

20)  Plaintiff learned of this account in the *Vaughn* Index produced in FOIA litigation seeking

emails from the false-identity email account created for former EPA administrator Lisa

Jackson, in the name of "Richard Windsor" (in *Competitive Enterprise Institute v. EPA,* No.

12-1617, 2014 WL 308093, *1 (D.D.C. Jan. 29, 2014)).

21)  The defendant's agency head, OSTP Dirrector John Holdren, is required by law and

regulation to conduct all work-related email correspondence on his official account.

22)  When federal employees correspond on work-related issues on non-official accounts, they

are required to copy their office, because all such correspondence are possibly "agency rec-

ords" under the Federal Records Act (44 U.S.C. § 3301), and more likely are covered by

FOIA.  Similarly, when agencies learn of such correspondence or the use of such accounts for

work-related correspondence they must obtain copies.

23)  This practice of creating work-related correspondence, which absent the required copying of

an employee's office is solely under the control of private parties and generally unknown to

and inaccessible by the federal government, also violates other obligations of federal officials,

and potentially other laws.  When the non-official account being used is not the employee's

---

("at least fourteen DOE officials used non-government accounts to communicate about the loan
guarantee program and other public business"). *See also, e.g.*,  *Promises Made, Promises
Broken: The Obama Administration's Disappointing Transparency Track Record*, report by the
U.S. House of Representatives Committee on Energy and Commerce, Vol. 1, Issue 3, July 31,
2012,
http://republicans.energycommerce.house.gov/Media/file/PDFs/20120731WHTransparencyStaff
Report.pdf, and supporting documents at
http://republicans.energycommerce.house.gov/Media/file/PDFs/20120731WHTransparencyStaff
ReportSupportingDocs.pdf.

private account but on the computer system of, and thereby under the control of, a third party

such as a former employer (in this case, the Woods Hole Research Center, or WHRC, an

environmentalist activist group not to be confused with the Woods Hole Oceanographic

Institute), their use is also problematic for other reasons.  Specifically, senior employees are

typically hired due to their work in a certain field outside of government; their email account

in the non-governmental position is how contacts correspond on the issues the now-employee

handles for the federal government, making most or all such correspondence now a potential

federal record and all subject to FOIA. Other unique problems include providing other parties

direct access to and control over public records and potentially over sensitive information.

24) In the face of increasing revelations about senior employees turning to private email accounts

to conduct official business and otherwise engage in work-related correspondence, and more

broadly circumventing the requirements of statutory and regulatory record-creating and

record-keeping regimes, OSTP refuses to comply with its FOIA obligations.

25) This case involves the OSTP's Director, the very person who wrote the "Holdren memo,"

which warned employees about the impropriety of the very activity he has engaged in.

**Plaintiff's Request**

26)  Plaintiff's FOIA request to OSTP dated October 15, 2013 sought specifically described

records sent to, from or copied to a specific non-official email address that plaintiff learned

OSTP Director John Holdren maintained and used for official or work-related correspondence

27) Until March 19, 2009 Mr. Holdren was Director of the environmentalist pressure group

"Woods Hole Research Center," a position he was required to relinquish to occupy his

appointed position in the federal government to work on the same issues, with many or all of

the same people as in his position with the federal government.  WHRC's board of directors is

a *Who's Who* of the environmentalist pressure group world.  The group and/or its officers and employees stood to benefit from OSTP decisions or information, and had interests potentially in conflict with OSTP's.  Regardless, WHRC had no right to access or control the emails sent or received by Mr. Holdren after he took up a position in the federal government.

28)  Maintaining this address constituted a conflict of interest by Mr. Holdren, but regardless all correspondence on that account during his federal employment were possible federal records and most or all were covered by FOIA.

**Defendant's Response**

29)  OSTP owed plaintiff a substantive response to its request FOIA 14-02 by November 14, 2013.  On February 4, 2014, OSTP sent a letter by regular mail stating in pertinent part, "OSTP is unable to search the 'jholdren@whrc.org' account for the records you have requested because that account is under the control of the Woods Hole Research Center, a private organization.  Because OSTP understands the records you requested to be beyond the reach of FOIA, OSTP considers your request unperfected." Denial Letter, OSTP FOIA No. 14-02, February 4, 2014.

30)  On February 18, 2014, plaintiff administratively appealed this reply, in the event it constitutes an initial determination.  Plaintiff specifically challenged defendant's assertion that plaintiff's request was not a FOIA request despite the requirements of the Federal Records Act, OSTP policy, and the "Holdren memo"[4] all making plain that employees cannot exempt

---

[4] May 10, 2010 Memo from OSTP Director John Holdren to all OSTP staff, *Subject: Reminder: Compliance with the Federal Records Act and the President's Ethics Pledge*, at 10-11, available at http://www.citizensforethics.org/page/-/PDFs/Legal/Investigation/Request_for_Investigation_into_White_House_20100628.pdf?nocdn=1. Herein, "Holdren memo."

records from the law by keeping them from the control of others in their agency. OSTP has failed to respond to that appeal.

31) OSTP owed plaintiff a response to its appeal (FOIA 14-02) by March 20, 2014.[5]

32) On March 31, 2014, defendant replied, asserting that plaintiff's appeal was instead a clarification. It mischaracterized the request as being for Holdren's emails between his OSTP and WHRC accounts, which it recognized as constituting a FOIA request. OSTP then began processing the mischaracterized search ("On February 18, 2014, you sent OSTP a letter clarifying that you are requesting a search of Dr. John Holdren's OSTP email account for records to and from jholdren@whrc.org.").

33) On April 18, 2014 plaintiff informed defendant it had either failed to respond to plaintiff's appeal or mischaracterized it as a clarification instead. In this communication, Plaintiff requested that defendant provide by May 1, 2014 a substantive response to the appeal as required, or plaintiff would pursue judicial review.

## LEGAL ARGUMENTS
### Defendant Owed and Has Failed to Provide Plaintiff a Substantive Response to its Request

34) FOIA provides that a requesting party is entitled to a substantive agency response both to requests and administrative appeals within twenty working days, affirming the agency is processing the request made and intends to comply.  It must rise to the level of indicating "that the agency is exercising due diligence in responding to the request...Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." (5 U.S.C. § 552(a)(6)(C)(i)).

Alternately, the agency must cite "exceptional circumstances" and request, and make the case

---

[5] *See* 5 U.S.C. § 552(a)(6)(A)(ii) (deadline for a determination is 20 working days); 32 CFR 2402.7(c) (same).

for, an extension that is necessary and proper to the specific request. *See also Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

35) A substantive agency response means that a covered agency must provide particularized assurance that it is reviewing some quantity of records with an eye toward production on some estimated schedule, so as to establish some reasonable belief that it is processing our request. 5 U.S.C.A. § 552(a)(6)(A)(i). *See also Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221, 227 (D.D.C. 2011) (addressing "the statutory requirement that [agencies] provide estimated dates of completion"). Defendant must at least gather, review, and inform a requesting party of the scope of potentially responsive records, including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions. *See CREW v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013) ("*CREW*").

36) Defendant first improperly responded to plaintiff's request (by not even treating it as a FOIA request, much less providing a substantive response within the statutory deadline assuring plaintiff that it would comply, as required by *CREW*).

37) Then it failed to properly rule on plaintiff's appeal of that determination by not substantively responding to the appeal, but instead distorting and effectively rewriting plaintiff's request (moreover, the deadline for responding to the appeal has since passed). As a result, plaintiff has exhausted its administrative remedies.

38) Then, it ignored plaintiff's further plea that defendant respond to the FOIA request plaintiff actually made, and address the substance of plaintiff's appeal. Thus, any further administrative appeals would clearly be futile, even if they were statutorily-required, which they are not.

39) For the foregoing reasons, defendant is now legally required to provide plaintiff records responsive to its request subject to legitimate withholdings.

### Defendant Has an Obligation to Enforce Federal Law and Policy to Stop the Expanding Use of Non-Official Email Accounts

40) As the House Committee on Oversight and Government Reform has noted, "The technological innovations of the last decade have provided tools that make it too easy for federal employees to circumvent the law and engage in prohibited activities." Statement, House Committee on Oversight and Government Reform, "The Hatch Act: The Challenges of Separating Politics from Policy," June 21, 2011, http://oversight.house.gov/hearing/the-hatch-act-the-challenges-of-separating-politics-from-policy/.[6]

41) OSTP and OSTP Director Holdren are required by law and regulation to conduct all work-related email correspondence on official accounts.[7] When employees create or receive work-related correspondence on non-official accounts this correspondence is presumptively an agency record, but regardless must be provided to the employee's agency.

42) OSTP Director Holdren, has specifically admonished employees about these obligations and against the practice of using non-official accounts for work-related correspondence, when the practice by an OSTP official was revealed ("Holdren memo").

---

[6] This statement was made in the context of the Hatch Act, 5 U.S.C. § 7321 *et seq.*, a law precluding federal employees from using taxpayer-provided resources to engage in certain unofficial activity, specifically politicking, including time, phones, computers, *etc.*

[7] *See, e.g.*, Government Accountability Office, "Federal Records: National Archives and Selected Agencies Need to Strengthen E-Mail Management," GAO-08-742, June 2008, http://www.gao.gov/assets/280/276561.pdf, at p. 37; *Frequent Questions about E-Mail and Records*, United States Environmental Protection Agency ("Can I use a non-EPA account to send or receive EPA e-mail? No, do not use any outside e-mail system to conduct official Agency business. If, during an emergency, you use a non-EPA e-mail system, you are responsible for ensuring that any e-mail records and attachments are saved in your office's recordkeeping system.") (emphasis in original) (available at www.epa.gov/records/faqs/email.htm).

43) Plaintiff has established that use of non-official email accounts for work-related correspondence is widespread within the federal executive branch, including at the highest level of OSTP.

44) Plaintiff understands, on information and belief, that work-related correspondence on private accounts are not searched for or produced in response to FOIA or congressional oversight requests for "records" or "electronic records."

45) The Government Accountability Office (GAO), addressing current electronic record practices, wrote in late 2010 that "almost 80 percent of agencies were at moderate or high risk of improper destruction of records; that is, the risk that permanent records will be lost or destroyed before they can be transferred to NARA [National Archives Records Administrator] for archiving or that other records will be lost while they are still needed for government operations or legal obligations." United States Government Accountability Office, "Report to the Ranking Member, Committee on Finance, U.S. Senate: NATIONAL ARCHIVES AND RECORDS ADMINISTRATION. Oversight and Management Improvements Initiated, but More Action Needed," GAO-11-15, October 2010, www.gao.gov/assets/320/310933.pdf, p. 18.  "The Archivist referred to these results as 'alarming' and 'worrisome'; in a subsequent oversight hearing, the director of NARA's Modern Records Program testified that the findings were 'troubling' and 'unacceptable.'" *Id.*, at p. 19.

46) Specifically as regards private accounts, "Agencies are also required to address the use of external e-mail systems that are not controlled by the agency (such as private e-mail accounts on commercial systems such as Gmail, Hotmail, Mac, *etc*.).  Where agency staff have access to external systems, agencies must ensure that federal records sent or received on such systems are preserved in the appropriate recordkeeping system and that reasonable steps are tak-

en to capture available transmission and receipt data needed by the agency for recordkeeping purposes." *Id*., at p. 37.

47) Plaintiff has established that agencies, specifically including OSTP, do not in fact ensure against the use of these accounts, nor do they obtain copies of such correspondence as required.

48) Regardless of how federal employees are accessing their non-official email accounts for work-related correspondence, *e.g*., through either an agency-provided or a non-official device, they are doing so, and experience affirms that employees making this decision also do not volunteer such emails in response to FOIA requests or congressional oversight, when these emails exist.

## Records Reflecting Official Business are Agency Records

49) The Department of Justice notes that "'Records' is not a statutorily defined term in FOIA. In fact it appears that the only definition of this term in the U.S. Code is that in the Federal Records Act. 44 U.S.C. § 3301." *What is an "Agency Record?"*, U.S. Department of Justice FOIA Update Vol. II, No. 1, 1980,

http://www.justice.gov/oip/foia_updates/Vol_II_1/page3.htm.

50) That definition of "records" for purposes of proper maintenance and destruction "includes all books, papers, maps, photographs, machine readable materials, or other documentary materials, *regardless of physical form or characteristics, made or received* by an agency of the United States Government under Federal law or *in connection with the transaction of public business and* preserved or *appropriate for preservation by that agency* or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures,

operations, or other activities of the Government or because of the informational value of data in them" (emphasis added).

51) The Federal Records Act requires a record somehow reflect the operations of government at some substantive level while FOIA covers far more, including phone logs, annotations and the most seemingly inconsequential piece of paper or electronic record in an agency's possession. At bottom "the question is whether the employee's creation of the documents can be attributed to the agency for the purposes of FOIA." *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006).

52) FOIA has the broadest definition of "record" among the relevant federal statutes.   "The definition of a record under the Freedom of Information Act (FOIA) is broader than the definition under the Federal Records Act." *See, e.g.,* Environmental Protection Agency, *What Is a Federal Record?*, http://www.epa.gov/records/tools/toolkits/procedures/part2.htm.   It covers emails sent or received on an employee's personal email account if their subject relates to official business. *See e.g.*, Senate Committee on Environment and Public Works, Minority Report, *A Call for Sunshine: EPA's FOIA and Federal Records Failures Uncovered* (Sept. 9, 2013) at 8

http://www.epw.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=513a8b4f-abd7-40ef-a43b-dec0081b5a62.

53) An email record's status is not dictated by the account on which it is created or received.

54) OSTP policy is also clear on this issue.  After being informed that an OSTP employee was using non-official email for official business, Director Holdren affirmed the law and policy in equally clear terms, reminding OSTP staff in the Holdren memo that work-related email must be copied to the agency, stating in pertinent part:

In the course of responding to the recent FOIA request, OSTP learned that an employee had, in a number of instances, inadvertently failed to forward to his OSTP email account work-related emails received on his personal account. The employee has since taken corrective action by forwarding these additional emails from his personal account to his OSTP account so that all of the work-related emails are properly preserved in his OSTP account.

If you receive communications relating to your work at OSTP on any personal email account, you must promptly forward any such emails to your OSTP account, even if you do not reply to such email. Any replies should be made from your OSTP account. In this way, all correspondence related to government business—both incoming and outgoing—will be captured automatically in compliance with the [Federal Records Act].[8]

55)  Notwithstanding that OSTP Director Holdren previously admonished OSTP employees for the same practice and instructed them to copy their office on all work-related correspondence from non-official email accounts, OSTP asserted that plaintiff's request was not in fact a FOIA request because it sought emails Holdren had placed under his sole control, in contravention of the Federal Records Act, OSTP policy, and the "Holdren memo." ("OSTP is unable to search the 'jholdren@whrc.org' account for the records you have requested because that account is under the control of the Woods Hole Research Center, a private organization. Because OSTP understands the records you requested to be beyond the reach of FOIA, OSTP considers your request unperfected." Denial Letter, OSTP FOIA No. 14-02, February 4, 2014).

54)  Agencies are increasingly called to search an employee's private accounts and equipment. For example, plaintiff has recently confronted this issue in other instances involving EPA Regional Administrators.  Defendant ultimately produced former Region 8 Administrator James Martin's work-related ME.com emails to and from the environmentalist pressure group

---

[8] May 10, 2010 "Holdren Memo," cited in FN 2, *supra*.

Environmental Defense (previously Environmental Defense Fund) addressing work-related issues. *See CEI v. EPA*,  D.D.C., C.A. No. 12-1497 (ESH)(FOIA 08-FOI-00203-12).

55)  Similarly, again because these emails represented the conduct of or otherwise related to official duties, Martin subsequently turned over to congressional investigators numerous other emails from the same account.[9]  EPA produced these records to plaintiff in response to EPA FOIA-R8-2014-000358.

56)  Plaintiff also obtained several hundred work-related emails from EPA Region 9 Administrator Jared Blumenfeld's Comcast.net account in response to FOIA EPA-R9-2013-007631, EPA Region 2 Administrator Judith Enck's AOL.com account in response to FOIA EPA-R2-2014-001585.

57)  Plaintiff also confronted this issue involving former National Oceanic and Atmospheric Administration (NOAA) official Susan Solomon, whose non-official account NOAA searched to respond to FOIA#2010-00199 (*see infra*).

**58)**  This is policy is also reflected in U.S. federal statute (Federal Records Act of 1950 44 U.S.C. 3101 *et seq*., the E-Government Act of 2002 and other legislation) and regulation (36 C.F.R. Subchapter B, Records Management, and all applicable National Archives and Records Administration (NARA) mandated guidance), and reflected in the GAO report cited in paragraph 45, *supra*.

---

[9] *See* Press Release and Letter from David Vitter, Ranking Member, Senate Committee on Environment and Public Works and U.S. House Committee on Oversight and Government Reform Chairman Darrell Issa (R-Calif.) to Bob Perciasepe, Acting Administrator, Senate Committee on Environment and Public Works (Minority), *In Light of New Information, Vitter, Issa Continue Investigation into Inappropriate Record Keeping Practices at EPA*, May 13, 2013, http://www.epw.senate.gov/public/index.cfm?FuseAction=PressRoom.PressReleases&ContentRecord_id=9f04b9b3-9d61-b58f-525b-18ff44d2683f.

### Defendant Owes a Reasonable Search of All Locations Likely to Hold Potentially Responsive Records

59) This Court recently acknowledged that FOIA requesters "can simply ask for work-related emails and agency records found in the specific employees' personal accounts; requesters" need not even identify the non-official email addresses at issue (which parties may not know). *CEI v. EPA,* No. 12-1617, 2014 WL 308093, at *14 (D.D.C. Jan. 29, 2014))

60) Requester did, in this request, specify the non-official account used for work-related correspondence by the official (after having obtained exemplars showing the account's use).

61) Plaintiff is owed an adequate, non-conflicted search and production responsive to its request including of the identified non-official email account, given the OSTP Director's known work-related use of this account, and his recent admission that he maintains it. *See* John Holdren Answers to Follow-Up Questions for Written Submission by Sen. David Vitter, February 25, 2014 Environment and Public Works Hearing, pp. 3-4.

62) FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).

63) A search must be "reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs*, 71 F.3d 885, 890 (D.C. Cir. 1995). In deciding whether a search is "reasonable," courts have been mindful of the purpose of FOIA to bring about the broadest possible disclosure. *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1999) ("reasonableness" assessed "consistent with congressional intent tilting the scale in favor of disclosure").

64) A cursory search does not suffice. *See CREW  v. U.S. Dept. of Justice*, 2006 WL 1518964 *4 (D.D.C. June 1, 2006) ("CREW"). Reasonable means that "all files likely to contain responsive materials . . . were searched." *Cuban v. SEC*, 795 F.Supp.2d 43, 48 (D.D.C. 2011).

65) The search also should be free from conflict. *See, e.g.*, *Kempker-Cloyd v. Department of Justice*, No. 97-cv-253, 1999 U.S. Dist. LEXIS 4813, at *12, *24 (W.D. Mich. Mar. 12, 1999) (employee cannot simply claim records are personal without agency review; faulting Justice Department for the fact that it "was aware that Michael Dettmer had withheld records as 'personal'" but did not require that "he submit those records for review" by the Department).

66) Agencies cannot overlook record systems or repositories. "[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An unsupervised search allowing for abuses is not reasonable and does not satisfy FOIA's requirements. *Kempker-Cloyd v. Dept. of Justice*, No. 97-253, 1999 U.S. Dist. LEXIS 4813, at *12, *24 (W.D. Mich. Mar. 12, 1999). An agency must search "those files which officials expec[t will] contain the information requested." *Greenberg v. Dept. of Treasury*, 10 F.Supp.2d 3, 30 n.38 (D.D.C. 1998). Agencies cannot structure their search techniques so as to deliberately overlook even a small and discrete set of data. *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979) (agency cannot create filing system which makes it likely that discrete classes of data will be overlooked).

67) It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360. The Act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny," consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.* at 361.

68) Accordingly, when an agency withholds requested documents the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See Tax Analysts*, 492 U.S. at 142 n.3; *Burka v. HHS,* 87 F.3d 508, 515 (D.C. Cir. 1996).

69) If it is likely that responsive records exist on non-official email accounts (or equipment) it is for the agency to search an employee's private accounts and equipment. *See, e.g., Burka v. U.S. Dept. of Health and Human Services*, 87 F.3d 508, 515 (D.C. Cir. 1996)(data tapes were "agency records" subject to FOIA, even though they were "neither created by agency employees, nor are they currently located on agency property"); *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327-28 (D.C.Cir.1999) (Coast Guard should have searched records located off premises in Atlanta at a non-Coast Guard site that contained federal records)). *See also, e.g*., August 17, 2012 Letter from U.S. Department of Commerce  Assistant General Counsel for Administration Barbara Fredericks to Christopher Horner, Competitive Enterprise Institute in response to NOAA FOIA#2010-00199, stating in pertinent part, "NOAA searched the email and offices of all individuals in the NESDIS and OAR that were reasonably calculated to have materials responsive to your request. This included searching the home office and personal email account of Dr. Solomon." (p. 2).

70) If a requester presents an agency with evidence that it overlooked responsive documents, it must act upon it. *Campbell v. Department of Justice*, 164 F.3d 20, 28-29 (D.C. Cir. 1999). "[A] law-abiding agency" must "admit and correct error" in its searches "when error is revealed." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). In *Friends of Blackwater v. Department of the Interior*, this court held it was "inconceivable" that no drafts or related cor-

respondence existed of documents produced from the agency's office existed, and found the search inadequate on those grounds. 391 F. Supp. 2d 115, 120–21 (D.D.C. 2005).

## **FIRST CLAIM FOR RELIEF**

**Release Under FOIA of Certain Records Sent To or From OSTP Director Holdren's Non-Official Account -- Declaratory Judgment**

71) Plaintiff re-alleges paragraphs 1-70 as if fully set out herein.

72) Plaintiff is owed an adequate, non-conflicted search and production responsive to its request including of the identified non-official email account given the OSTP Director's known work-related use of this account and his recent admission that he maintains it.

73) Plaintiff has sought and been denied production of responsive records representing work-related correspondence.

74) Plaintiff has a statutory right to the information it seeks.

75) Defendant has refused to read plaintiff's request as written, but instead rewrote it.

76) Plaintiff has exhausted its administrative remedies.

77) Plaintiff asks this Court to enter a judgment declaring that:

i. Work-related emails sent to or from the account as described in plaintiff's above-described October 2013 request are agency records, subject to release under FOIA unless subject to one of that Act's mandatory exclusions;

ii. Defendant OSTP has failed to provide records responsive to plaintiff's request;

iii. Defendant OSTP failed to adequately respond plaintiff's request.

iv. By describing plaintiff's administrative appeal as merely clarifying its request, and mis-stating what that appeal argued, defendant OSTP has failed to respond to plaintiff's administrative appeal or otherwise has improperly responded.

v.  Defendant's failure to properly respond to plaintiff's FOIA request seeking the described records is not reasonable, and does not satisfy its obligations under FOIA;

vi. Defendant's failure to properly respond to plaintiff's administrative appeal is not reasonable, and does not satisfy its obligations under FOIA;

vii. Defendant's refusal to produce the requested records is unlawful; and

viii. Defendant must release the requested records.

## SECOND CLAIM FOR RELIEF
### Release Under FOIA of Certain Records Sent To or From OSTP Director Holdren's Non-Official Accounts -- Injunctive Relief

78)  Plaintiff re-alleges paragraphs 1-77 as if fully set out herein.

79)  Plaintiff is entitled to injunctive relief compelling defendant agencies to produce all records responsive to its request described, *supra*.

80)  Plaintiff asks this Court to enter an injunction pursuant to 5 U.S.C. § 552(a)(4)(B) enjoining defendant from further withholding responsive records and ordering the defendant to produce to plaintiff within 10 business days of the date of the order the requested records, or a detailed *Vaughn* index claiming FOIA exemptions applicable to withheld information.

81)  Further, that this Court shall retain jurisdiction to enforce the terms of the order as well as retain jurisdiction to conduct such further proceedings and award relief as may be necessary to resolve any breach of the order and to retain jurisdiction over any plaintiffs' motion seeking judicial review of some or all withheld and/or redacted documents.

## THIRD CLAIM FOR RELIEF
### Violations of the Administrative Procedure Act-- Declaratory Judgment

82)  Plaintiff re-alleges paragraphs 1-81 as if fully set out herein.

83)  Defendant has failed to act in an official capacity under color of legal authority by failing to comply with the mandates of FOIA, through its failure and refusal to issue initial

determinations, respond to plaintiff's administrative appeal, or otherwise process plaintiff's information request.

84) Defendant has unlawfully withheld agency action by failing to comply with the mandates of FOIA, through its failure and refusal to conduct a proper records search or otherwise process plaintiff's information request.

85) Defendant's failure to comply with the mandates of FOIA violates plaintiff's right to access public records. Its refusal to conduct a proper records search or otherwise process plaintiff's information request has injured plaintiff's interests in public oversight of governmental operations and violates defendant's statutory duties under the Administrative Procedure Act (APA).

86) Plaintiff has suffered a legal wrong as a result of the defendant's failure to comply with the mandates of FOIA.  Defendant's failure and refusal to issue initial determinations or otherwise process plaintiff's information request have injured plaintiff's interests in public oversight of governmental operations and violate Defendant's statutory duties under the APA.

87) Defendant's failure and refusal to issue a timely final determination on plaintiff's information request constitutes agency action unlawfully withheld and unreasonably delayed and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(1).

88) Further, defendant's failure and refusal to issue initial determinations or otherwise process plaintiff's information request is in violation of FOIA's statutory mandates and is therefore arbitrary, capricious, or an abuse of discretion and not in accordance with law and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(2).

89) Plaintiff is entitled to judicial review under the APA, 5 U.S.C. §§ 702, 706.

90) Plaintiff is entitled to costs of disbursements and costs of litigation, including reasonable attorney and expert witness fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## FOURTH CLAIM FOR RELIEF
### Duty to Acquire and Preserve Email on Non-Official Accounts
### -- Declaratory Judgment

91) Plaintiff re-alleges paragraphs 1-90 as if fully set out herein.

92) OSTP's pattern, practice, and ongoing policy of failing to acquire, and not preserving, work-related email sent to or from non-official email accounts violates the Federal Records Act (FRA) and illegally denies the public access to records covered by the Freedom of Information Act.[10] It is also arbitrary and capricious agency action that violates the Administrative Procedure Act (APA), 5 U.S.C. § 704, *et seq.*[11] OSTP's failure to take remedial action and to notify the Archivist of the loss of the documents despite clear statutory mandates also is actionable under the APA.[12]

93) Plaintiff CEI regularly files FOIA requests including with OSTP seeking agency records, as the docket of this District illustrates.[13] CEI has filed, and will continue to file, such FOIA requests seeking emails including those sent or received on non-official accounts. This is part of CEI's ongoing transparency initiative seeking public records relating to environmental policy and how policymakers use public resources.

---

[10] *See, e.g., Payne Enters., Inc. v. U.S.*, 837 F.2d 486, 491 (D.C.Cir.1988) (separate from claims seeking relief for specific FOIA requests, requesting parties may also assert a "claim that an agency policy or practice will impair the party's lawful access to information in the future"); *Hajro v. U.S.C.I.S.*, 832 F.Supp.2d 1095 (N.D. Cal. 2012) (attorneys could bring lawsuit challenging pattern or practice of agency delays in responding to FOIA requests for clients).

[11] *See e.g., CREW v. Executive Office of the President*, 587 F.Supp.2d 48 (D.D.C. 2008) (rejecting motion to dismiss claims over agency's allegedly illegal destruction and failure to preserve emails under the APA, 5 U.S.C. §§ 704-06, and the Mandamus Act, 28 U.S.C. § 1361).

[12] *See Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991) ("the FRA *requires* the agency head and Archivist to take enforcement action" in response to destruction of records; "On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or destruction of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review.").

[13] *See, e.g., Competitive Enterprise Institute v. Environmental Protection Agency*, D.D.C. civil action ## 12-1497, 12-1617, 13-406, 13-434, 13-624, 13-779, 13-1074, 14-582, 14-681.

94) This practice has led plaintiff being denied production of responsive records reflecting the conduct of official business.

95) Plaintiff has a statutory right to the information it seeks.

96) Defendant's response to plaintiff's FOIA request affirms it is not acquiring or preserving emails produced on non-official accounts.

97) Moreover, federal regulations mandate that "Records shall not be disposed of while they are the subject of a pending . . . lawsuit under the FOIA". 40 C.F.R. § 2.106.

98) Further, it is a violation of the U.S. Code to willfully and unlawfully conceal, remove, mutilate, obliterate, or destroy any record, proceeding, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any public officer of the United States, or attempt or act with intent to do so.[14]

99) As a regular FOIA requester, CEI will continue to experience ongoing harm in the form of emails never searched for or produced, lost information and destruction of the documents it seeks unless this Court declares OSTP's policy of not obtaining and not preserving emails sent or received on non-official accounts illegal and puts an end to it.

100) OSTP has not disavowed or repudiated its position justifying the widespread use of such accounts leading to the loss of such agency documents. To the contrary, by its response to plaintiff's request OSTP clearly intends to continue this objectionable position, thereby frustrating future FOIA requests by plaintiff. It is therefore evident that the impermissible practice is a continuing one, that plaintiff will experience a continuing injury due to this practice, and that no relief is forthcoming.[15]

---

[14] 18 USC § 2071 - Concealment, removal, or mutilation generally.
[15] *See Better Gov't Ass'n v. Dept. of State*, 780 F.2d 86, 90-92 (D.C. Cir. 1992).

101)   "The case is fit for review because it presents a clear-cut legal question," whether OSTP's

document preservation policy regarding emails sent or received on non-official accounts is

"inconsistent" with federal recordkeeping laws such as the Federal Records Act and FOIA.[16]

102)   This Court should issue a declaratory judgment that OSTP has violated its duty to preserve

records under the FRA and FOIA; has acted arbitrarily, capriciously, and illegally in violation

of the APA; and has a duty to acquire, preserve, and prevent the destruction by OSTP

employees, of work-related email sent or received on non-official accounts.

### FIFTH CLAIM FOR RELIEF
**Duty to Acquire and Preserve Email on Non-Official Accounts
– Injunctive Relief**

103)   Plaintiff re-alleges paragraphs 1-102 as if fully set out herein.

104)   Defendant will continue its unlawful policy of not preserving work-related emails sent or

received on non-official accounts unless it is enjoined from so doing, even though that policy

violates the Federal Records Act, destroys documents subject to FOIA, and is arbitrary and

capricious agency action violative of the Administrative Procedure Act. "In utilizing its

equitable powers to enforce the provisions of the FOIA, the district court may consider

injunctive relief where appropriate ... to bar future violations that are likely to occur."[17]

Courts have previously found that injunctive relief is necessary to prevent agencies from

deleting or destroying documents subject to FOIA.[18]

105)   Thus, CEI is entitled to injunctive relief forbidding defendant from destroying or failing to

preserve such emails.

---

[16] *See Venetian Casino Resort LLC v. EEOC*, 409 F.3d 359, 365 (D.C. Cir. 2005).

[17] *See Long v. United States Internal Revenue Service*, 693 F.2d 907, 909 (9th Cir.1982).

[18] *Union Pac. R.R. Co. v. U.S. Envtl. Prot. Agency*, 2010 WL 2560455 (D. Neb. June 24, 2010)
(granting temporary restraining order against EPA, enjoining the EPA and its employees from
deleting or destroying emails in violation of FOIA, and finding "irreparable harm" from EPA's
"pattern of deleting relevant emails").

106)   In addition, CEI is entitled to preliminary injunctive relief forbidding such practices, because the practice and resulting failure to preserve documents results in irreparable harm by forever eliminating access to those documents, and because there is a strong public interest in ensuring an agency's compliance with federal recordkeeping laws such as the Federal Records Act and FOIA,[19] and with regulations commanding that records not be disposed of while they are the subject of a pending lawsuit under the FOIA.

107)   This Court should enter an injunction ordering defendant to preserve, and prevent the destruction by defendant's employees, of emails sent or received on non-official accounts; establish safeguards against their removal and loss; and to notify the head of the National Archives and Records Administration of any destruction, removal, or loss of such records.

### SIXTH CLAIM FOR RELIEF
**Duty to Acquire and Preserve Email on Non-Official Accounts – Writ of Mandamus**

108)   Plaintiff re-alleges paragraphs 1-107 as if fully set out herein.

109)   Plaintiff has a clear right to relief under laws such as the Federal Records Act; the defendant has a clear duty to act; and there is no other adequate remedy available to plaintiff.

110)   CEI has a clear statutory right to the records that it seeks, defendant has not fulfilled its clear statutory obligations to prohibit the practice of using non-official email accounts for work-related correspondence, to preserve and provide such records, and there is no legal basis for destroying them.

---

[19] *See EPIC v. Department of Justice*, 416 F.Supp.2d 30, 40-42 (D.D.C. 2006) (granting preliminary injunction to expedite response to FOIA request, because even delay in producing documents is irreparable harm; and noting that there is a strong public interest in enforcing compliance with federal laws such as FOIA) ("'there is an overriding public interest ... in the general importance of an agency's faithful adherence to its statutory mandate.'"), *quoting Jacksonville Port Authority v. Adams.*, 556 F.2d 52, 59 (D.C.Cir.1977).

111)   Thus, this destruction of documents justifies the grant of a writ of mandamus or other

extraordinary relief, and gives rise to a remedy under the Mandamus Act, 28 U.S.C. 1361.

Accordingly, this court should issue a writ of mandamus.

### SEVENTH CLAIM FOR RELIEF
**Duty to Notify the Archivist of the United States - Injunctive Relief**

112)   Plaintiff re-alleges paragraphs 1-111 as if fully set out herein.

113)   Federal records in the form of work-related emails sent and received on non-official

accounts have been removed from defendant, and not provided to defendant as required,

according to defendant's claim it does not possess records which by law should be in its

possession.

114)   The failure by defendant to obtain and preserve work-related emails on a non-official

account has caused the removal of those federal records from the appropriate federal agency.

115)   The Director of the White House Office of Science and Technology Policy has actual and

constructive knowledge of the failure to obtain and preserve federal records in the form of

work-related emails sent and received on non-official accounts.

116)   The head of any Federal agency has an obligation to notify the Archivist of the United

States whenever "any actual, impending, or threatened unlawful removal, defacing, alteration,

or destruction of records in the custody of the agency of which he is the head come[s] to his

attention" 44 U.S.C.A. § 3106.

117)   The head of any Federal agency has a further obligation to "initiate action through the

Attorney General for the recovery of records he knows or has reason to believe have been

unlawfully removed from his agency." *Id.*

118)   The knowledge on the part of the agency head triggered the obligation under 44 U.S.C.A. § 3106 to notify the Archivist of the United States and the Attorney General, in order to recover those records removed.

119)   Defendant has never notified the Archivist or the Attorney General regarding the failure to obtain and preserve or prevent the removal of the federal records, or recover the federal records described in this complaint.

120)   The failure by these federal agency heads to take remedial action and to notify the Archivist and the Attorney General of the removal of the documents despite clear statutory mandates is actionable under the APA.[20]

121)   When the head of a Federal agency fails to take action in compliance with the obligation of 44 U.S.C.A. § 3106, plaintiff has a right to seek to compel such compliance.[21]

122)   Thus this Court should order the Director of the White House Office of Science and Technology Policy to notify the Archivist of the United States, and initiate actions through the Attorney General regarding the removal of federal records permitted by the Administrator and to assist the Attorney General in initiating an enforcement action to recover those records.

## EIGHTH CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

123)   Plaintiff re-alleges paragraphs 1-122 as if fully set out herein.

---

[20] *See Armstrong v. Bush*, 924 F.2d at 295 ("the FRA *requires* the agency head and Archivist to take enforcement action" in response to destruction of records; "On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or destruction of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review.").
[21] *See id.*

124)   Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

125)   This Court should enter an injunction ordering defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

126)   Plaintiff has a statutory right to the records that it seeks, defendant has not fulfilled its statutory obligations to provide the records or a substantive response, and there is no legal basis for withholding the records.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for its attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 5th day of May, 2014,

_____/s/_____
Hans Bader, D.C. Bar No. 466545
Sam Kazman, D.C. Bar No. 946376
1899 L Street, N.W., 12th Floor
Washington, D.C. 20036
(202) 331-2278

Christopher C. Horner, D.C. Bar # 440107
1489 Kinross Lane
Keswick, VA 22947
(202) 262-4458

*Attorneys for Plaintiff*