**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Competitive Enterprise Institute, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| Office of Science and Technology Policy | : Civil Action No. 14-765 (GK) |
| | : |
| | : |
| Defendant. | : |
| | : |

**MEMORANDUM OPINION**

Plaintiff Competitive Enterprise Institute ("Plaintiff" or "CEI") brings this action against the Office of Science and Technology Policy ("Defendant," "OSTP," or "the Government"), a component of the Executive Office of the President of the United States. Plaintiff alleges violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, (Counts I & II), the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, et seq., (Count III), and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-14, (Counts IV-VII).

This matter is presently before the Court on the Government's Motion to Dismiss, [Dkt. No. 7]. Upon consideration of the Motion, Opposition, [Dkt. No. 8], Reply, [Dkt. No. 10], and the entire record herein, and for the reasons stated below,

Defendant's Motion is **granted**, and Plaintiff's Complaint shall be **dismissed**.

## I.    BACKGROUND

### A.    Statutory Framework

#### 1. *Freedom of Information Act*

FOIA, 5 U.S.C. § 552, allows individuals to request the disclosure of records from government agencies. Id. § 552(a)(3). When an agency receives a request that "reasonably describes" the records sought, id. § 552(a)(3)(A), it must "conduct[] a search reasonably calculated to uncover all relevant documents." Morely v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks omitted). The agency must then disclose any responsive agency records it locates, except to the extent that any such records are protected from disclosure by one of FOIA's nine statutory exemptions. See 5 U.S.C. § 552(b).

If an agency withholds responsive records not covered by one of FOIA's exemptions, after exhausting administrative remedies, the requester may file a lawsuit in district court to challenge the agency's decision to withhold. See id. § 552(a)(4)(B). As the Supreme Court has held, in order to state a claim under FOIA, a requester must allege that the agency has (1) improperly; (2) withheld; (3) agency records. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150

(1980). "Judicial authority to devise remedies and enjoin agencies can only be invoked . . . if the agency has contravened all three components of this obligation." Id.

 2. *Federal Records Act*

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." Pub. Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999); accord 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-14. Under the FRA, agency heads are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101. Not all documents in an agency's possession qualify as "records" under the FRA. Instead, "records" includes any "recorded information" "made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value in them." Id. § 3301(a)(1)(A).

Agencies may only dispose of records on terms approved by the Archivist of the United States, who is head of the National

Archives and Records Administration ("NARA"). 44 U.S.C. § 3303; 36 C.F.R. § 1225.10. In order to efficiently manage the disposition process, agencies may create records schedules, which must be approved by the NARA, to govern recurring types of records. 44 U.S.C. § 3303(3); 36 C.F.R. §§ 1225.10-1225.26. Records may be deemed temporary or permanent, the former designation leading to destruction after a set period and the latter, to preservation and eventually, transfer to the NARA. 36 C.F.R. §§ 1225.14, 1225.16.

If an agency head learns of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," he or she must notify the Archivist. 44 U.S.C. § 3106. If the agency head "knows or has reason to believe [that records] have been unlawfully removed from [his or her] agency," then the agency head "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records[.]" Id. If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time," then the Archivist "shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." Id.

-4-

### B.    Factual Background[1]

On October 15, 2013, Plaintiff sent OSTP a FOIA request
seeking "copies of all policy/OSTP-related emails sent to or
from jholdren@whrc.org (including as cc: or· bcc:)." CEI FOIA
Request at 2. [Dkt. 7-1]; see also compl. ¶¶ 2-3, 26-28. The
jholdren@whrc.org email account, provided to OSTP Director John
Holdren ("Dr. Holdren" or "Director Holdren") is maintained by
his former employer, a private entity called the Woods Hole
Research Center. Compl. ¶ 2, 23. The request alleged that "John
Holdren maintained this account after joining the White House,
and that he used this address/account for OSTP-related
correspondence." CEI FOIA Request at 2.

CEI clearly stated that its request would "entail[]
searching jholdren@whrc.org." Id. According to CEI's request,
while "[i]t [would] make[] sense for OSTP to search Mr.
Holdren's OSTP account(s)[,]  . . .  this request [was] for
responsive records on the cited account[,]" id., i.e.,
jholdren@whrc.org, not his OSTP account(s).

---

[1] For purposes of ruling on a motion to dismiss, the factual
allegations of the complaint must be presumed to be true and
liberally construed in favor of the plaintiff. Aktieselskabet AF
21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir.
2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253
(D.C. Cir. 1979). Therefore, unless otherwise noted, the facts
set forth herein are taken from Plaintiff's Complaint.

On February 4, 2014, Defendant responded to CEI's request stating that "OSTP [would be] unable to search the 'jholdren@whrc.org' account . . . because that account [was] under the control of the Woods Hole Research Center, a private organization." Compl. ¶ 29 (quoting OSTP's Response to FOIA Request [Dkt. 7-2]). OSTP stated that it "underst[ood] the records [CEI] requested to be beyond the reach of FOIA," and therefore, "consider[ed] [the] request unperfected." Id.

On February 18, 2014, CEI replied to OSTP's letter. Plaintiff requested administrative appellate review of the agency's initial determination that the records sought were outside of FOIA's ambit. Compl. ¶ 30.

On March 7, 2014,[2] OSTP responded to CEI's letter of February 18. Compl. ¶ 32. In OSTP's view, CEI's letter did not serve as an appeal; instead, it merely "clarif[ied] that [CEI was] requesting a search of Dr. Holdren's OSTP email account for records to and from jholdren@whrc.org." Id.

On April 18, 2014, CEI responded, calling OSTP's reading a mischaracterization and reiterating its desire for the agency to

---

[2] Plaintiff's Complaint ¶ 32 states that OSTP did not respond to CEI's February letter until March 31, 2014, but that appears to be a mistake. A copy of the letter with the text quoted in the Complaint bears the date March 7, 2014. [Dkt. No. 7-4]. CEI attached to its Opposition another letter from OSTP dated March 31, 2014, [Dkt. No. 8-1], but the March 31 letter also references the March 7 letter.

search for all OSTP-related emails sent to or from jholdren@whrc.org. Compl. ¶ 33; CEI's April Response [Dkt. No. 7-5]. CEI noted that, in its view, the agency had failed to respond to CEI's appeal and that CEI would pursue judicial review unless OSTP provided a substantive response by May 1, 2014. Compl. ¶ 33.

On May 5, 2014, CEI filed its Complaint; on July 11, 2014, OSTP filed its Motion to Dismiss; on July 28, 2014, CEI filed its Opposition; and on August 21, 2014 OSTP filed its Reply.

## II.  STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences

derived from the facts alleged." <u>Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.</u>, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 557) (alteration in <u>Iqbal</u>).

## III. ANALYSIS

### A.    Counts I & II: FOIA Claims Seeking an Injunction and a Declaratory Judgment

Counts I and II of CEI's Complaint arise under FOIA, which allows private persons to contest an agency's (1) improper (2) withholding of (3) agency records. <u>Kissinger</u>, 445 U.S. at 150.

Plaintiff has been exceedingly clear about what it wanted from OSTP: work-related emails residing on Dr. Holdren's unofficial email account, jholdren@whrc.org, which is maintained by a private entity, the Woods Hole Research Center. <u>See</u> CEI FOIA Request at 2 ("This [request] entails searching jholdren@whrc.org. It makes sense for OSTP to search Mr. Holdren's OSTP account(s) . . . but this request is for responsive records on the cited account."); Compl. ¶ 26 ("Plaintiff's FOIA request to OSTP . . . sought specifically

described records sent to, from or copied to a specific non-official email address[.]").[3]

Relying on Kissinger, 445 U.S. at 139, the Government contends that it is not "withholding" the requested emails because it neither possesses nor controls them.[4] In Kissinger, the Supreme Court held that FOIA's "withholding" requirement demonstrates that an agency's "possession or control is a prerequisite to FOIA disclosure duties[.]" Id. at 152. Thus, FOIA did not reach transcriptions of Henry Kissinger's phone calls once the transcriptions had been removed from the State Department's possession and placed under the control of Mr.

---

[3] In its brief, CEI maintains that it also wants copies of emails sent to or from jholdren@whrc.org that reside on Dr. Holdren's official OSTP email account. Pl.'s Opp'n at 18-22. CEI acknowledges, however, that before litigation commenced, OSTP had already begun rolling productions of responsive emails on Dr. Holdren's OSTP account. Id. at 25. CEI claims that there is something "[s]uspicious[]" about the Government's cessation of these rolling productions, id., but the Government only stopped production after CEI filed suit, alleging that OSTP had "mischaracterized[,]" "distort[ed,] and effectively rewr[itten]" CEI's FOIA request. Compl. ¶¶ 32, 37. In the face of these allegations and CEI's statement that its "request [was] for responsive records on [jholdren@whrc.org,]" CEI FOIA Request at 2, the Government's decision to stop production was neither suspicious nor surprising. CEI's insinuations lack any merit.

[4] The Government also contends that the emails are not "agency records" because OSTP did not create or obtain them. Because CEI's FOIA claims fail on the "withholding" prong of the Kissinger analysis, the Court need not reach the question of whether the emails sought are agency records.

-9-

Kissinger and the Library of Congress. Kissinger, 445 U.S. at 154-55.

Plaintiff's own allegations, which the Court must accept as true at this stage, belie any argument that OSTP has control over emails located on the jholdren@whrc.org account. Plaintiff itself admits repeatedly that emails on the unofficial account are outside of OSTP's control. Compl. ¶¶ 23, 27, 30, 46. The Complaint specifically alleges that when an agency employee uses an email account "under the control of, a third party . . . in this case, the Woods Hole Research Center," the emails are "solely under the control of private parties and generally unknown to and inaccessible by the federal government[.]" Compl. ¶ 23. Plaintiff cannot now disregard its own allegations.

CEI attempts to resuscitate its claim with the argument that because (1) Dr. Holdren maintains control over jholdren@whrc.org and (2) Dr. Holdren is OSTP's Director, OSTP controls the unofficial email account. Even putting aside this argument's fundamental conflict with CEI's allegations, it has no legal basis.

The law is clear, however, that agencies do not -- merely by way of the employer/employee relationship -- gain "control"

over their employees' personal email accounts.[5] <u>Competitive</u>
<u>Enterprise Institute v. National Aeronautics and Space Admin.</u>,
989 F. Supp. 2d 74, 86 (D.D.C. 2013) (holding that NASA
employee's emails located on university account were not under
the agency's control); <u>see also</u> U.S. Gov't Accountability
Office, GAO-08-742, FEDERAL RECORDS: National Archives and
Selected Agencies Need to Strengthen E-Mail Management (2008)[6]
("Agencies are also required to address the use of external
email systems that are not controlled by the agency (such as
private email accounts on commercial systems such as Gmail,
Hotmail, Mac, <u>etc.</u>)").[7] That is precisely why agencies admonish

---

[5] Quoting out of context, CEI argues that "employees are not
distinct from their agencies." Pl.'s Opp'n at 4 (quoting
<u>Judicial Watch, Inc. v. Dep't of Energy</u>, 310 F. Supp. 2d 271,
300 (D.D.C. 2004)). The cited language, however, had nothing to
do with agency control of employees' personal accounts, and
instead, dealt only with whether Department of Energy employees
detailed to the Office of the Vice President created FOIA-
accessible records during the detail. <u>Judicial Watch, Inc.</u>, 310
F. Supp. 2d at 300. More importantly, the district court was
reversed on this point. See <u>Judicial Watch, Inc. v. Dep't of</u>
<u>Energy</u>, 412 F.3d 125, 132 (D.C. Cir. 2005) (holding that "the
detailees were as a practical matter employees" of the Office of
the Vice President and that therefore their records were not
"agency records" within the meaning of FOIA).

[6] Available at http://www.gao.gov/assets/280/276561.pdf.

[7] CEI relies on <u>Landmark Legal Foundation v. EPA</u>, 959 F. Supp. 2d
175, 182 (D.D.C. 2013) for the proposition that, if so directed
by a FOIA request, agencies must search employees' personal
email accounts. The factual context of that case was quite
different. Because of "EPA's silence" about to whether "personal

-11-

their employees to use their official accounts for government business (and discipline employees who repeatedly fail to do so). See id.; Armstrong v. Bush, 924 F.2d 282, 296 n.12 (describing options available to agency officials to prevent and remedy the unlawful removal of agency records by employees); see also Compl. ¶ 42.

Under FOIA, even high ranking agency officials have personal interests distinct from those of the agencies they lead. See e.g., Kissinger, 445 U.S. at 157 (rejecting argument that would render "Kissinger's personal books, speeches, and all other memorabilia stored in his office . . . agency records subject to disclosure under [] FOIA."); Bureau of Nat'l Affairs, Inc. v. Dep't of Justice, 742 F.2d 1484, 1496 (D.C. Cir. 1984) (holding that appointment calendars for DOJ Assistant Attorney General were not subject to FOIA because they "were created for the personal convenience of individual officials so that they could organize both their personal and business appointments."). CEI fails to cite any authority supporting the proposition that simply because Dr. Holdren heads the OSTP, his unofficial email account falls under the agency's control.

---

accounts were being used to conduct official business[,]" the Court did not have the opportunity to address whether EPA actually had the requisite control of its employees' accounts. Id.

-12-

Finally, CEI worries that if government employees' personal email accounts are not subject to FOIA, agency officials will escape FOIA coverage altogether by conducting government business with their personal accounts. CEI's reliance on FOIA to solve this anticipated problem is misplaced: "Congress never intended when it enacted [] FOIA, to displace the statutory scheme embodied in the Federal Records Act and the Federal Records Disposal Act providing for administrative remedies to safeguard against wrongful removal of agency records as well as to retrieve wrongfully removed records." Kissinger, 445 U.S. at 154; accord Armstrong, 924 F.2d at 294 (In post-Kissinger amendments to the FRA "Congress again decided to rely on administrative enforcement, rather than judicial review at the behest of private litigants to prevent the destruction or removal of records."). Accordingly, Counts I & II of Plaintiff's Complaint shall be dismissed.

**B.   Count III:  APA Claim Seeking Review of Agency's Failure to Take Action on FOIA Request**

Count III of the Complaint seeks relief under the APA for OSTP's failure to take action with respect to CEI's FOIA request. The Government contends that the APA permits judicial review only when "there is no other adequate remedy in a court[.]" Gov't's Mot. at 24 (quoting 5 U.S.C. § 704). Because

FOIA provides its own remedial scheme, "[t]his Court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA." Feinman v. F.B.I., 713 F. Supp. 2d 70, 76 (D.D.C. 2010). For this reason, and because CEI failed to respond to the Government's arguments in its Opposition, Count III shall be dismissed.

> C.   **Counts IV and V: FRA Claims Seeking a Declaratory Judgment and an Injunction Ordering OSTP to Preserve and Prevent the Destruction of Documents**

Count IV seeks a declaratory judgment that, under the RFA, OSTP has a duty to acquire, preserve, and prevent the destruction of work-related email sent or received on non-official accounts, and Count V seeks an injunction to enforce this duty. Under the FRA, however, private parties may challenge only (1) the adequacy of an agency's record-keeping guidelines; or (2) the agency head or Archivist's failure to seek initiation of an enforcement action by the Attorney General. Armstrong, 924 F.2d at 291-93, 295. Private plaintiffs may not challenge an agency's compliance with its guidelines. Id. at 294.

As CEI's Complaint acknowledges, OSTP's records retention policies are facially adequate. Compl. ¶ 54 ("OSTP policy is also clear on this issue. After being informed that an OSTP employee was using non-official email for official business, Director Holdren affirmed the law and policy in equally clear

-14-

terms, reminding OSTP staff in the Holdren memo that work-related email must be copied to the agency[.]"); id. ¶ 30 ("[T]he Federal Records Act, OSTP policy and the 'Holdren memo' all mak[e] plain that employees cannot exempt records from the law by keeping them from the control of others in their agency.").

Attempting to evade the FRA's preclusion of compliance claims, CEI argues that its Complaint "describes the Holdren memo to illustrate what OSTP once admitted its policy should be, not as evidence of what its policy (and practice) in fact is." Pl.'s Opp'n at 26-27 (emphasis in original). The allegations in CEI's Complaint, however, fail to show that OSTP has "repudiated the Holdren Memo" as CEI now argues. Id. at 27.

Instead the Complaint provides an example of Director Holdren following what CEI believes to be an acceptable records retention policy, namely issuance of his memo to all employees. Compl. ¶ 54. On the basis of vague allegations, without citing any specifics, CEI bases its argument that OSTP's policy (as practiced) is inadequate and that it has engaged in a "pattern, practice, and ongoing policy of failing to acquire, and not preserving, work-related email sent to or from non-official email accounts[.]" Compl. ¶ 92. However, this allegation is no more than a "legal conclusion couched as a factual

-15-

allegation[,]" and is accordingly, "not entitled to the
assumption of truth." Ashcroft, 556 U.S. at 678-79. For these
reasons Counts IV and V shall be dismissed.

### D.    Count VI: Writ of Mandamus

Count VI of the Compliant seeks a writ of mandamus ordering
the Director of OSTP to "prohibit the practice of using non-
official email accounts for work-related correspondence" and "to
preserve and provide" the documents Plaintiff seeks. Compl.
¶ 110. The "remedy of mandamus is a drastic one, to be invoked
only in extraordinary circumstances. Mandamus is available only
if: (1) the plaintiff has a clear right to relief; (2) the
defendant has a clear duty to act; and (3) there is no other
adequate remedy available to plaintiff." Power v. Barnhart, 292
F.3d 781, 784 (D.C. Cir. 2002) (internal citations and quotation
marks omitted).

The Government argues that CEI's request for a writ of
mandamus is duplicative of Plaintiff's FRA claims and that the
request is faulty because: (1) the FRA precludes judicial review
of agency compliance with record-retention guidelines, and
therefore Plaintiff has no clear right to relief; (2) OSTP has
no clear duty to act because agencies have discretion under the
FRA; and (3) to the extent that Plaintiff has any right to
relief, the availability of APA review of an agency's failure to

-16-

notify the National Archivist of unlawful record removals is
enough to preclude mandamus. CEI failed to respond to any of
these arguments in its Opposition, and therefore, Count VI shall
be dismissed.

> **E.   Count VII: FRA Claim Seeking an Injunction Requiring
> OSTP's Director to Notify National Archivist of
> Removal of Federal Records**

Count VII seeks an order directing the head of the OSTP to
"notify the Archivist of the United States, and initiate actions
through the Attorney General regarding the removal of federal
records permitted by the Administrator [sic] and to assist the
Attorney General in initiating an enforcement action to recover
those records." Compl. ¶ 122. Unlike CEI's other FRA claims,
Count VII is not barred by the Act itself. <u>Armstrong</u>, 924 F.2d
at 296 ("[I]f the agency head or Archivist does nothing while an
agency official destroys or removes records in contravention of
agency guidelines and directives, private litigants may bring
suit to require the agency head and Archivist to fulfill their
statutory duty to notify Congress and ask the Attorney General
to initiate legal action.").

In order to state a claim, CEI must plausibly allege that
records have been unlawfully "removed" from OSTP. <u>Id.</u> The
parties do not dispute that although a record may reside on an
unofficial email account, it has not been "removed" for purposes

of the FRA as long as a copy also exists on an official account.[8]
Thus, in order to state a claim, CEI must plausibly allege that
Dr. Holdren failed to copy his official account with any agency
records residing on his unofficial account.

The Complaint never directly alleges that Dr. Holdren
failed to place copies of agency records on his official
account. Instead -- quite tellingly -- Plaintiff merely states
that OSTP's response to the FOIA request shows that
jholdren@whrc.org contains records not copied to OSTP's files.
In Plaintiff's view, "OSTP asserted that plaintiff's request was
not in fact a FOIA request because it sought emails Holdren had
placed under his sole control, in contravention of the Federal
Records Act[.]'" Compl. ¶ 55 (emphasis added)); see also Compl.
¶ 113. Rather than state a factual basis for its allegation that
Dr. Holdren unlawfully removed agency records, CEI simply
point's to OSTP's response to CEI's FOIA request.[9]

---

[8] Though not relevant here, the Government adds that an email is
unlawfully "removed" (even when the agency has a copy) if there
is some independent reason why the document should not appear on
an unofficial account, such as the presence of classified
information. Gov't's Reply at 19.

[9] CEI attempts to shift the burden of proof to OSTP, arguing that
"OSTP has not even alleged that most [records sent to or from
unofficial email accounts] were captured on agency systems[.]"
Pl.'s Opp'n at 24. CEI contends that "it is simply implausible
to suggest that each and every one of the many emails in
Holdren's 'personal' email account did not qualify as a federal

-18-

However, OSTP's response, which is quoted in the Complaint, does not assert that "Holdren had placed [agency records] under his sole control[.]" Compl. ¶ 55. To the contrary, the agency responded, "OSTP is unable to search the 'jholdren@whrc.org' account for the records you have requested because that account is under the control of the Woods Hole Research Center, a private organization." Compl. ¶ 55 (quoting Denial Letter, OSTP FOIA No. 14-02, February 4, 2014).

CEI would have the Court interpret OSTP's refusal to search Dr. Holdren's unofficial account to be an admission that uncopied agency records reside there. That does not suffice to state a claim. CEI must affirmatively allege facts that make plausible the claim that documents have been "removed" from OSTP. It has failed to do so,[10] and therefore Count VII shall be dismissed.

_____

record[.]" Pl.'s Opp'n at 26. However, it is CEI, the Plaintiff in this matter, that bears the burden of alleging sufficient facts to support its claim.

[10] Plaintiff's Opposition states that CEI discovered that "many examples of work-related correspondence between Holdren (using his personal email account) and then-EPA administrator Lisa Jackson turned up in a sample Vaughn index as withheld agency records, in CEI v. EPA, D.D.C. No. 12-1617 (JEB)." Pl.'s Opp'n at 25. Even though the Complaint refers to the cited Vaughn index, it fails to make this particular allegation. See Compl. ¶¶ 2, 20, 80. Plaintiff now asks the Court to take judicial notice of the Vaughn index and of the truth of CEI's newfound allegation. The Court cannot take judicial notice of the facts

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **granted**, and Plaintiff's Complaint shall be **dismissed**. An Order shall accompany this Memorandum Opinion.

March 3, 2015

*Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF

---

CEI attempts to establish because they (1) were not alleged in CEI's Complaint and (2) appear to be without basis in the document cited. The Vaughn index contains numerous redactions of an email address belonging to Dr. Holdren, but contrary to CEI's assertion, the redacted address is apparently the OSTP Director's official White House account. Decl. of Eric Wachter [Dkt. No. 10-1] ¶ 7 ("EPA withheld the official White House email address of Dr. Holdren[.] . . . No other email address was withheld by EPA in these documents.").

-20-