UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF SCIENCE AND TECHNOLOGY POLICY | : | Civil Action No. 14-765 (GK) |
| | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OPINION

Plaintiff Competitive Enterprise Institute ("Plaintiff" or "CEI") brings this action against the Office of Science and Technology Policy ("Defendant," "OSTP," or "the Government"), a component of the Executive Office of the President of the United States. Plaintiff alleges that the Government violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, (Counts I & II), because it failed to produce emails residing in a private email account belonging to Dr. John P. Holdren, an Assistant to the President and Director of OSTP. The email account was provided to Dr. Holdren by his former employer, the Woods Hole Research Center ("Woods Hole"), a private, non-governmental organization.

This matter is presently before the Court on Defendant's Motion for Summary Judgment ("Mot.") [Dkt. No. 32]. Upon consideration of the Motion, Opposition ("Opp.") [Dkt. No. 33],

Supplemental Authority [Dkt. No. 34], Reply ("Rep.") [Dkt. No. 35], Surreply [Dkt. No. 36-1], and the entire record herein, and for the reasons stated below, Defendant's Motion is **granted**.

## I.   BACKGROUND

### A. Statutory Framework

#### 1. Freedom of Information Act

FOIA, 5 U.S.C. § 552, allows individuals to request the disclosure of records from government agencies. Id. § 552(a)(3). When an agency receives a request that "reasonably describes" the records sought, id. § 552 (a)(3)(A), it must "conduct [] a search reasonably calculated to uncover all relevant documents." Morely v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks omitted). The agency must then disclose any responsive agency records it locates, with the exception of any records that are protected from disclosure by one of FOIA's nine statutory exemptions. See 5 U.S.C. § 552(b). Both paper and electronic records may constitute "agency records" under FOIA. See 5 U.S.C. § 552(f)(2)(A).

If an agency, after exhausting administrative remedies, withholds responsive records not covered by one of FOIA's exemptions, the requester may file a lawsuit in district court to challenge the agency's decision to withhold. See id. §

552(a)(4)(B). As the Supreme Court has held, in order to state a claim under FOIA, a requester must allege that the agency has (1) improperly; (2) withheld; (3) agency records. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980).

### 2. Federal Records Act

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." Pub. Citizen v. Carlin, 184 F.3d 900, 902 (D.C.Cir.1999); accord 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-14. Under the FRA, agency heads are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101.

Not all documents in an agency's possession qualify as "records" under the FRA. Instead, "records" includes any "recorded information" "made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency ... as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value in them." Id. § 3301(a)(1)(A). The definition of "records" under the FRA does not include

-3-

"duplicate copies of records preserved only for convenience." Id. § 3301(a)(1)(B).

Agencies may only dispose of records on terms approved by the Archivist of the United States, who is head of the National Archives and Records Administration ("NARA"). 44 U.S.C. § 3303; 36 C.F.R. § 1225.10. In order to efficiently manage the disposition process, agencies may create records schedules, which must be approved by the NARA, to govern recurring types of records. 44 U.S.C. § 3303(3); 36 C.F.R. §§ 1225.10–1225.26. Records may be deemed temporary or permanent, the former designation leading to destruction after a set period and the latter, to preservation and eventually, transfer to the NARA. 36 C.F.R. §§ 1225.14, 1225.16.

If an agency head learns of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," he or she must notify the Archivist. 44 U.S.C. § 3106. If the agency head "knows or has reason to believe [that records] have been unlawfully removed from [his or her] agency," then the agency head "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery *231 of records [.]" Id. If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of

-4-

time," then the Archivist "shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." Id.

In November 2014, Congress Amended the FRA to address federal employee's obligations when using non-official email accounts to conduct government business. The amendment states that,

> An officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee (1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record.

44 U.S.C. § 2911(a).

## B. Factual Background

On January 21, 2009, Dr. Holdren began working at OSTP. Holdren Decl. ¶ 1 [Dkt. No. 26.1]. Previously, he worked as the Director of Woods Hole from 2005 to 2008. Id. ¶ 2. Woods Hole provided Dr. Holdren with a Woods Hole email account in approximately June 2005. Id. ¶ 4. Dr. Holdren used the Woods Hole account as a personal email account until approximately January 2014. Id. Occasionally, Dr. Holdren used this email account for OSTP work-related correspondence. Id. ¶ 7.

When Dr. Holdren received a work-related email on his Woods Hole account, OSTP policy and Federal law required him to forward the email to his official email account at OSTP or to copy his official OSTP email account on the correspondence. Id.; see 44 U.S.C. § 2911(a). The Government and Dr. Holdren have both attested to Dr. Holdren's compliance with this requirement. See Leonard Decl. ¶¶ 15-16 [Dkt. No. 32-2]; Holdren Decl. ¶ 7 [Dkt. No. 26-1] ("My understanding is that my practice of copying or forwarding work-related e-mails to my OSTP account complied with OSTP records policies, and I endeavored to follow that practice at all times").

## C. Procedural Background

In October 2013, Plaintiff submitted a FOIA request to OSTP, requesting all emails relating to OSTP on Dr. Holdren's Woods Hole email account. Compl. ¶ 3. The Government responded to CEI's FOIA request on February 4, 2014, informing CEI that "OSTP is unable to search the 'jholdren@whrc.org' account for the records you have requested because that account is under the control of the Woods Hole Research Center, a private organization." OSTP's Response to FOIA Request at 1 [Dkt. No. 7-2]. On February 18, 2014, CEI responded with a letter arguing that Dr. Holdren's OSTP-related emails were subject to FOIA regardless of where they were located.

-6-

On March 7, 2014, the Government responded to CEI's February 18, 2014 letter. OSTP interpreted the February 18, 2014 letter as clarifying CEI's FOIA request to specify that it was seeking copies of all documents sent to or from the Woods Hole account, regardless of where those documents were located. In its March 7, 2014 reply, OSTP stated that it had "conducted a search of Dr. Holdren's OSTP email account and will produce responsive records to you on a rolling basis[.]" OSTP Letter of Mar. 7, 2014 at 1 [Dkt. NO. 7-4]. OSTP produced the first set of documents, consisting of 110 pages, on March 31, 2014. See OSTP's Letter of Mar. 31, 2014 at 2 [Dkt. No. 8-1].

On April 18, 2014, CEI responded and argued that OSTP had mis-characterized CEI's FOIA request. See CEI Letter of Apr. 18, 2014 at 2 [Dkt. No. 7-5]. CEI wrote that, "OSTP incorrectly asserts that CEI had clarified that it was 'requesting a search of Dr. Holdren's OSTP email account for records to and from jholdren@whrc.org' that are OSTP-related. Our request covers OSTP-related documents regardless of whether they are from an ostp.gov email account, and regardless of whether they are found in Dr. Holdren's ostp.gov email account." Id. (emphasis in original). OSTP later responded to this letter on May 1, 2014, producing 480 pages as part of the second set of responsive documents. See Leonard Decl. ¶ 10.

On May 5, 2014, Plaintiff filed this lawsuit, which includes two FOIA claims. Compl. ¶¶ 71-81 [Dkt. No. 1].

On July 11, 2014, the Government moved to dismiss Plaintiff's FOIA claims on two grounds: (1) that OSTP was not withholding any records; and (2) that the OSTP-related Woods Hole emails were not agency records subject to FOIA. Motion to Dismiss [Dkt. No. 7]. After full briefing, on March 3, 2015, the Court granted the Government's Motion to Dismiss based on the withholding argument, without addressing the agency records argument. March 3, 2015 Order and Mem. Op. [Dkt. Nos. 11-12]. On July 5, 2016, the Court of Appeals reversed the dismissal of the FOIA claims and remanded the case. See CEI v. OSTP, 827 F.3d 145, 150 (D.C. Cir. 2016).

On August 29, 2016, the Court of Appeals issued its Mandate [Dkt. No. 15] and on September 19, 2016, this Court held a Status Conference. At that Conference, CEI raised concerns about the preservation of Dr. Holdren's emails in the Woods Hole account. See Sept. 19, 2016 Tr. at 3 [Dkt. No. 18]. Specifically, CEI stated that its concern was that the Woods Hole emails would not be preserved if Dr. Holden, a political appointee, left his position

at OSTP at the end of the Obama administration.[1] Id. at 5-7. The Court directed the Parties to confer about the preservation issue. Id. at 11-12.

At a subsequent Status Conference on October 11, 2016, the Parties informed the Court that they failed to reach an agreement on the preservation issue. See Oct. 11, 2016 Tr. at 3-4 [Dkt. No. 22]. On October 14, 2016, the Court issued a briefing schedule for the preservation issue. Oct. 14, 2016 Minute Order. On October 17, 2016, the Court ordered that Summary Judgment briefing would not occur until after the Court decided the preservation issue.

On October 17, 2016, Plaintiff filed a Motion to Compel Preservation of Private Emails [Dkt. No. 24]. On October 31, 2016, the Government filed its Opposition to the Motion to Compel [Dkt. No. 26]. On November 10, 2016, Plaintiff filed its Reply to the Motion to Compel [Dkt. No. 29].

On December 12, 2016, this Court granted in part and denied in part Plaintiff's Motion to Compel, and ordered "that Dr. Holdren preserve all of the emails in his Wood Hole email account,

---

[1] Dr. Holdren has since left the OSTP and rejoined Woods Hole as a senior advisor to its president. See Dr. John Holdren Rejoins the Woods Hole Research Center (Feb. 24, 2017), available at http://whrc.org/dr-john-holdren-rejoins-the-woods-hole-research-center/.

including any archived emails and any deleted email archives, on a thumb drive to be kept in his possession until such a time that this Court determines that they must be turned over to OSTP for processing or that they may be deleted." December 12, 2016 Order ("Preservation Order") [Dkt. No. 31]. The Court further ordered that the Government not conduct any searches of the Woods Hole emails at that time. Id.

On December 27, 2016 the Government filed its Motion for Summary Judgment. On January 10, 2017, Plaintiff filed its Opposition. On January 18, 2017, Plaintiff filed a Notice of Supplemental Authority. On January 19, 2017, the Government filed its Reply. On January 26, 2017, Plaintiff filed a Motion for Leave to File a Surreply [Dkt. No. 36] as well as its Surreply.

## II.   STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F.Supp.2d 83, 87 (D.D.C. 2009). Summary judgment should be granted only if the moving party has shown that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Waterhouse v. Dist. of Columbia, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is

material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."' Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"To prevail on summary judgment [against a FOIA challenge], the defending 'agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents."' Morley v. C.I.A., 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "Summary judgment may be based on affidavit, if the declaration sets forth sufficiently detailed information 'for a court to determine if the search was adequate."' Students Against Genocide v. Dep't of State, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)). "In determining whether the defendant agency has met this burden, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Reliant Energy Power Generation, Inc. v. F.E.R.C., 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (internal citations omitted).

## III. ANALYSIS

Our Court of Appeals assumed without deciding that the documents sought from the Woods Hole account were agency records for the purpose of reversing this Court's finding that the documents were not improperly withheld. See generally CEI, 827 F.3d 145. The Court of Appeals explicitly did not reach the question of whether "no document found among the jholdren@whrc.org email falls within the definition of 'agency records.'" CEI, 827 F.3d at 150. An "agency employee's communications on non-agency accounts may constitute 'agency records.'" Wright v. Admin. for Children & Families, No. CV 15-218, 2016 WL 5922293, at *8 (D.D.C. Oct. 11, 2016).

However, this Court need not determine if the Woods Hole emails are agency records because the Government's arguments regarding duplicate records and its reasonable search are determinative.

### A. Duplicate Emails Need Not Be Produced

The Government contends that it need not produce Dr. Holdren's OSTP-related Woods Hole emails because they are duplicates of emails that exist on OSTP servers. The Court finds this argument convincing.

-12-

The Government has established, and CEI has failed to convincingly challenge, that Dr. Holdren complied with agency policy requiring him to forward all work-related emails from his private email account to his OSTP email account. As evidence of this practice, the Government cites a number of sources.

First, OSTP's General Counsel and Chief FOIA Officer submits that it is his understanding that Dr. Holdren complied with the agency's policy of copying all OSTP related emails from his Woods Hole account to his OSTP account. See Leonard Decl. ¶¶ 15-17, 20. On this basis, the Government submits that all of the OSTP-related Woods Hole emails exist on the OSTP servers. See id.

Second, Dr. Holdren submitted a declaration attesting to his compliance with OSTP policy on forwarding private server emails. Dr. Holdren attested that "[t]hrougout my time at OSTP, whenever I sent or received work-related e-mail on my WHRC e-mail address, my customary practice was to forward that e-mail to my official e-mail account at OSTP or to copy my official OSTP email account on the correspondence." Holdren Decl. ¶ 7.

Third, the Government submits that OSTP policy requires all employees to forward work-related correspondence on non-official email accounts to their official OSTP accounts. Compl. ¶ 22. The Government rightly points out that government employees, including

Dr. Holdren, are entitled to the presumption that they complied with agency policies, absent evidence to the contrary. See Bracy v. Gramley, 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have 'properly discharged their duties'") (quoting U.S. v. Armstrong, 517 U.S. 456 (1996)); Stone v. Stone, 136 F.2d 761, 763 (D.C. Cir. 1943) ("In an action which challenges the conduct of a public officer, a presumption of law is indulged in his favor that his official duties were properly performed"); Wright, 2016 WL 5922293, at *8 ("the presumption applies that agency employees comply with applicable law and, consequently, that agency records responsive to a FOIA request would unlikely be located solely in their personal email accounts").

The presumption that Dr. Holdren complied with OSTP policy is further strengthened by evidence submitted by the Government showing that Dr. Holdren complied with the policy on approximately 4,500 occasions. See Leonard Decl. ¶ 17. Courts are entitled to rely on evidence of customary practice, such as Dr. Holdren's pattern of compliance with OSTP policy, in finding that the practice was followed on a particular occasion. See Fed. R. Evid. 406. Thus, the fact that Dr. Holdren forwarded work-related emails from the Woods Hole account to his OSTP account on 4,500 occasions

makes it more likely than not that he forwarded any particular work-related Woods Hole email to his OSTP account.

The presumption that Dr. Holdren complied with OSTP policy is rebuttable. However, "a FOIA plaintiff [must] rebut agency affidavits with something more than pure speculation," and CEI has failed to do so.[2] <u>Nance v. FBI</u>, 845 F. Supp. 2d 197, 203 (D.D.C. 1998).

CEI argues that Dr. Holdren did not <u>always</u> comply with OSTP policy but that it was only his "customary practice." <u>See</u> Opp. at 14. However, Plaintiff neglects to quote the following sentence in Dr. Holdren's declaration, which states that his "understanding is that my practice of copying or forwarding work-related e-mails to my OSTP account complied with OSTP records policies, and I endeavored to follow that practice <u>at all times</u>." Holdren Decl. ¶ 7 (emphasis added). Plaintiff's creative exercise in semantics is

---

[2] Plaintiff points out that in the Preservation Order of December 12, 2016, this Court stated that policies are rarely followed to perfection by anyone," and that "<u>at this stage of the case</u>, this Court cannot assume that each and every work-related email in the Woods Hole account was duplicated in Dr. Holdren's work email account." December 12, 2016 Memorandum Opinion at 8 [Dkt. No. 31]. However, that Preservation Order was issued so as to preserve the status quo while Plaintiff was given a chance to rebut the presumption that Dr. Holdren followed agency policy with specific information to the contrary. <u>See</u> <u>Wright</u>, 2016 WL 5922293 at *8. Plaintiff has not done so.

insufficient to overcome the presumption of credibility to which Dr. Holdren's declaration is entitled.

Furthermore, Plaintiff has not pointed to any specific instance when Dr. Holdren did, or even may have, violated OSTP policy. Instead, Plaintiff argues that Dr. Holdren may not have forwarded all of his work-related Woods Hole emails to his OSTP account because he cannot be relied upon to determine what is work-related. Opp. at 21-23. However, agency employees are routinely relied upon to determine the responsive nature of their own records. See Wadelton v. Dep't of State, 106 F. Supp. 3d 139, 148-149 (D.D.C. 2015).

Having determined that Dr. Holdren complied with OSTP's policy of forwarding all his work-related emails from his private email account to his OSTP accounts, the Court concludes that any work-related emails in Dr. Holdren's Woods Hole account are duplicates of emails located in his OSTP account. See Wright, 2016 WL 5922293 at *8.

FOIA does not require agencies to produce duplicate records. See, e.g., Jett v. FBI, 139 F. Supp. 3d 352, 365 (D.D.C. 2015) ("The statute is not a discovery tool that requires agencies to produce every conceivable copy in the possession of every governmental custodian."); Defs. of Wildlife v. Dep't of Interior,

314 F. Supp. 2d 1, 10 (D.D.C. 2004) ("[I]t would be illogical and wasteful to require an agency to produce multiple copies of the exact same document."); see also Crooker v. State Dep't, 628 F.2d 9, 11 (D.C. Cir. 1980) (per curiam) ("Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim").

Therefore, the Court concludes that the Government does not need to produce Dr. Holdren's work-related Woods Hole emails as they exist in his Woods Hole account,[3] but of course must produce those copies of his emails existing in his OSTP account which it finds appropriate to produce under FOIA.[4]

---

[3] The Government has argued that the privacy interests of government employees in their personal emails justify the withholding of the Woods Hole emails. The Court is not persuaded by this argument. As the Court of Appeals noted, such a rationale would permit "an agency [to] shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head." CEI 827 F. 3d at 146.

[4] The Court agrees with the Government that the metadata in the Woods Hole emails does not in itself make each email unique as compared to the forwarded reproduction of the email in Dr. Holdren's OSTP account. See Covad Commc'ns Co. v. Revonet, Inc., 267 F.R.D. 14, 20 (D.D.C. 2010) ("In the absence of some reason to believe that the metadata will yield an answer that the hard copy will not, production of the information in native format [] is not necessary.") (citing The Sedona Conference, Best Practices, Recommendations, & Principles for Addressing Electronic Document Production # 12 (2004) ("Unless it is material to resolving the

-17-

**B. OSTP Conducted a Reasonable Search**

The Government also need not produce the Woods Hole emails because its search was "reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999)) (internal quotation marks omitted). "Agencies need not turn over every stone, but they must conduct a 'good faith, reasonable search of those systems of records likely to possess requested records.'" Freedom Watch, Inc. v. Nat'l Sec. Agency, No. 1:12-CV-01088 (CRC), 2016 WL 7191558, at *3 (D.D.C. Dec. 12, 2016) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

As to Summary Judgment, an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the

---

dispute, there is no obligation to preserve and produce metadata absent agreement of the parties or order of the court.")).

-18-

information requested." <u>Oglesby v. U.S. Dept. of Army</u>, 920 F. 2d
57, 68 (D.C. Cir. 1990).

Here, the Government has done so. OSTP conducted a search for
OSTP-related emails sent to or from Dr. Holdren's Woods Hole e-
mail account by searching Dr. Holdren's OSTP account. Mot. at 33.
After receiving CEI's FOIA request in October 2013, OSTP requested
that EOP technical staff conduct a search of Dr. Holdren's OSTP e-
mail account for the search term "jholdren@whrc.org" (the Woods
Hole e-mail address). <u>Id.</u>; Leonard Decl. ¶ 18. The search's date
range was from January 20, 2009 (the day prior to the beginning of
Dr. Holdren's employment at OSTP) to October 16, 2013 (the date of
the FOIA request). Leonard Decl. ¶ 18. This search returned
approximately 4500 results. <u>Id.</u>

Plaintiff's challenge to the sufficiency of the Government's
search is limited to its complaint that the Government did not
search Dr. Holdren's Wood Hole account. However, as described
above, this Court has no reason to doubt that Dr. Holdren complied
with OSTP's policy of forwarding all work-related emails from his
private Woods Hole email account to his OSTP account. Thus, "agency
records responsive to a FOIA request would unlikely be located
solely in [Dr. Holdren's] personal email account[], rendering a

-19-

search of th[at] account[] unnecessary." <u>Wright</u>, 2016 WL 5922293 at *8.

The Court acknowledges that in <u>Wright</u>, the Plaintiff failed to present any evidence that the government employees had ever even used their personal email accounts for work related emails. <u>Wright</u>, 2016 WL 5922293 at *7-8. Here, Dr. Holdren admittedly used his private email account for work related emails. However, Plaintiff has presented absolutely no concrete evidence that he failed to forward any work-related Woods Hole email to his OSTP account. Therefore the outcome here must be the same as in <u>Wright</u>. The Court finds that the Government need not produce Dr. Holdren's work-related Woods Hole emails because its search was reasonably calculated to uncover duplicates of all of the records located in the Woods Hole account.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**; and it is further

**ORDERED,** that the Government shall continue to produce Dr. Holdren's work-related Woods Hole emails as they exist in Dr. Holdren's OSTP email account; and it is further

**ORDERED**, that Plaintiff's Motion for Leave to File a Surreply shall be **granted**.

An Order shall accompany this Memorandum Opinion.

March 13, 2017

*Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF